**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MAPFRE INSURANCE COMPANY,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 21-2240-KSM** |
| **JOHN F. FORTE, et al.,** | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                          **April 18, 2022**

Plaintiff Mapfre Insurance Company seeks a declaratory judgment that it does not owe a

duty to defend or indemnify its insured, Defendant John F. Forte, in the underlying state court

action.  The state lawsuit was filed after a tragic motor vehicle accident involving Mr. Forte's all-

terrain vehicle ("ATV") that resulted in the death of Mr. Forte's son, Gianni, and caused

Gianni's passenger, Nicholas Rapino, Jr., to sustain serious and permanent injuries.  (Doc. No.

1.)

Presently before the Court is Mapfre's motion for summary judgment (Doc. No. 18).  For

the reasons that follow, the Court grants Mapfre's motion.

## I.      Background

Taking the facts in the light most favorable to Mr. Forte, the relevant facts are as follows.

### A.  The Underlying State Court Action

On June 17, 2020, Nicholas Rapino, Jr. ("Nicholas"), by and through and his parents

Laurie and Nicholas Rapino, (collectively, "the Rapinos"), sued Mr. Forte and Mr. Forte's

deceased son, Gianni, in the Bucks County Court of Common Pleas, following a tragic accident involving Gianni and Nicholas.  (*See* Doc. No. 1-3.)  The Rapinos pleaded the following facts in the complaint in that case:

On January 27, 2017, Gianni and Nicholas, both aged thirteen, met at Daulton Potter's[1] house in Bensalem, Bucks County around 4:30 p.m.  (*Id.* at ¶¶ 19–21.)  An hour later, around 5:40 p.m., Gianni and Nicholas left Potter's house on Mr. Forte's ATV.[2]  (*See id.* at ¶¶ 22–23; *see also id.* at ¶ 6 ("At a time prior to January 27, 2017, [Mr. Forte] purchased and gave to his son [Gianni] a high-powered, all-terrain vehicle (ATV), Honda TRX-250X.").)  Gianni drove the ATV.  (*Id.* at ¶ 23.)  Gianni was seated in the driver's seat and not wearing a helmet, and Nicholas sat behind him and was wearing a helmet.  (*Id.* at ¶¶ 22–23.)

Gianni drove down Ogden Avenue, made a right turn onto Woodbine Avenue, then made a left turn onto Bristol Pike, followed by a left turn onto Bensalem Boulevard, traveling toward the intersection of Bensalem Boulevard and Jason Drive.  (*Id.* at ¶¶ 23–26, 32.)  Bensalem Boulevard is a "two (2) lane public street"; as Gianni drove the ATV north down the street toward Jason Drive, Joseph Archut, Jr. drove his 2016 Lexus south down the street, also toward Jason Drive.  (*Id.* at ¶¶ 32–33.)

Gianni was driving the ATV "at a high rate of speed, approximately 35 mph," when Mr. Archut made a left turn in front of the ATV onto Jason Drive.  (*Id.* at ¶¶ 35–37.)  The ATV "crash[ed] into and impacted the side of" Mr. Archut's Lexus.  (*Id.* at ¶ 39.)  At the time of the accident, around 5:49 p.m., it was dark outside, as the sun had already set, yet the ATV headlight was off.  (*Id.* at ¶¶ 27, 41.)

---

[1] Potter is a third party and not a named defendant in the state court complaint.  (*See generally id.*)

[2] Mr. Forte was not present.  (*See generally id.*)

Tragically, Gianni was killed at the scene of the accident[3] and Nicholas was unconscious and critically injured.  (*Id.* at ¶¶ 42–43.)  As a result of the accident, Nicholas suffered "serious and permanent injuries to his brain and other parts of his body."  (*Id.* at ¶ 44.)

In the state court complaint, the Rapinos asserted claims for negligence and negligent entrustment against Mr. Forte (Count II) and for negligence against Gianni (Count I).[4]  (*See id.* at 13–15.)  The Rapinos claim that Mr. Forte was "negligent, careless and reckless" in:

a. Permitting his then minor son [Gianni] to leave his home with the ATV knowing that he was going to engage in driving on public roadways and, with the knowledge that his minor son was, in so doing, likely to use the ATV so as to create the unreasonable risk of harm to others.

b. Permitting [his] then minor son [Gianni] . . . to leave his home to engage in the use of the ATV with unsupervised possession of the dangerous instrumentality/ATV;

c. Failing to supervise his minor son['s] . . . conduct in relation to the use of the ATV under the circumstances;

. . .

f. Failing to instruct his minor son [Gianni] . . . in the proper use of the ATV;

g. Failing to properly train and inform his minor son [Gianni] . . . of proper safety techniques and methods in the use of the ATV; and

h. Permitting his minor son [Gianni] . . . to leave his home with the ATV when he knew or should have known that the probable result would be his engaging in driving the ATV in an unsafe and dangerous manner.

(*Id.* at ¶ 59(a)–(h); *see also id.* at ¶¶ 10–11.)

---

[3] The Police Crash Report filed in connection with the accident lists the location of the accident as "Bensalem Boulevard."  (Doc. No. 18-4 at 2.)

[4] The Rapinos also asserted a negligence claim against Mr. Archut (Count III).  (*Id.* at 15–16.)

### B. The Policy

At the time of the accident, Mr. Forte had a Homeowners Insurance Policy with Mapfre, which covered his property at 5421 Flushing Road, Bensalem, PA 19020.  (Doc. No. 1-4 at 3.) The Homeowners Policy included coverage for personal liability claims brought against the insured.  (*Id.* at 30 ("**Coverage E – Personal Liability**.  If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies, we will . . . provide a defense.").)

However, the Policy also excluded certain motor vehicle liability claims from coverage:

**SECTION II – EXCLUSIONS**

**A. 'Motor Vehicle Liability'**

. . .

2.   If Exclusion A.1. does not apply, there is still no coverage for 'motor vehicle liability', unless the 'motor vehicle'[5]  is:

. . .

d.   Designed for recreational use off public roads and:

(1)   Not owned by an 'insured'; or

(2)   Owned by an 'insured' provided the 'occurrence' takes place:

(a)   On an 'insured location' as defined in Definition B.6.a., b., d., e. or h.; or

(b)   Off an 'insured location' and the 'motor vehicle' is:

(I)   Designed as a toy vehicle for use by children under seven

---

[5] The Policy defined "motor vehicle" as "(a) a self-propelled land or amphibious vehicle; or (b) any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above."  (*Id.* at 16 (B.7.).)  The parties do not appear to dispute that the ATV fell within the Policy's definition of a motor vehicle.

(II)    Powered by one or more batteries; and

(III)    Not built or modified after manufacture to exceed a speed of five miles per hour on level ground[.]

(*Id.* at 30–31.)

In turn, the Policy defines "motor vehicle liability" and "insured location." (*See id.* at 15–16.) First, "motor vehicle liability" is defined as:

a. Liability for 'bodily injury' or 'property damage' arising out of the:

(1) Ownership of such vehicle or craft by an 'insured';

(2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

(3) Entrustment of such vehicle or craft by an 'insured' to any person;

(4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an 'insured'; or

(5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

(*Id.* at 15 (B.1.a.(1)–(5)).) Second, "insured location" means:

a. The 'residence premises';

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in a. and b. above . . . .

(*Id.* at 16 (B.6.).)

5

### C.  Procedural History

On May 17, 2021, Mapfre filed this lawsuit seeking a declaration that it is not required to defend or indemnify Mr. Forte against the Rapinos' claims in the underlying state court action. (Doc. No. 1.)  Subsequently, Mapfre filed the instant motion for summary judgment.  (Doc. No. 18.)  In its motion, Mapfre argues that it does not owe the duties of defense or indemnification because, at the time of the accident, Gianni was driving on a public road (which does not fall within the Policy's definition of an "insured location") and therefore, the motor vehicle exclusion applies.  (*Id.*)

Mr. Forte opposed the motion and filed a response and statement of disputed facts. (Doc. No. 20.)  Mr. Forte contends that the motor vehicle liability exclusion does not apply to claims for negligent training.  Interestingly, in direct contradiction to the allegations in the underlying state complaint, Mr. Forte asserts that the accident did not occur on a public road and Mapfre has not met its burden of introducing admissible evidence to prove that it did.  (*Id.*)  Mapfre filed a reply and responded to Mr. Forte's statement of disputed facts.  (Doc. Nos. 21–22.)  Mapfre argues that negligent entrustment and supervision cases fall under the Policy's definition of motor vehicle liability and therefore still fall under the exclusion, and that under Pennsylvania law, the Court need only look to the four corners of the underlying complaint to determine whether it owes a duty to defend.  (Doc. No. 21.)

## II.   Legal Standards

### A.  Summary Judgment

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### B.  Duty to Defend or Indemnify

"The interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (cleaned up).  "Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation." *Penn-Am. Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 264 (Pa. Super. Ct. 2011) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 540 (Pa. 2010)).  "Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy," and if the language is "clear and unambiguous, we must give effect to that language." *Donegal Mut. Ins. Co.*, 938 A.2d at 290 (cleaned up); *see also 401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 454–55 (Pa. 2005).

Under Pennsylvania law, an insurer's duty to defend its insured is triggered whenever the factual allegations in the complaint "may potentially come within the coverage of the policy." *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 250 (3d Cir. 2019) (cleaned up); *see also Am & Foreign Ins. Co.*, 2 A.3d at 541 ("As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend.  Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.").  "The allegations raised in the underlying complaint alone fix the insurer's duty to defend." *Penn-Am. Ins. Co.*, 27 A.3d at 265 (cleaned up).  And an insurer may

refuse to defend a claim only if "it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." *Id.* (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 948 A.2d 834, 846 (Pa. Super. Ct. 2008)).

"The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint."[6] *Am. & Foreign Ins. Co.*, 2 A.3d at 541; *see also Nationwide Mut. Ins. Co. v. Arnold*, 214 A.3d 688, 695 (Pa. Super. Ct. 2019) ("The insurer's obligation to defend is fixed solely by the allegations in the underlying complaint." (cleaned up)). "It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." *Nationwide*

---

[6] Mr. Forte argues that Mapfre's motion for summary judgment should be denied because it has failed to submit admissible evidence as to the location of the accident. (*See* Doc. No. 20 at 9–10.) But this ignores the governing law, which provides that we may look only to the four corners of the underlying complaint to determine whether the duty to defend is triggered. *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 331 (Pa. 2006) ("In this case, the Superior Court looked to information not contained in the underlying complaint in its determination that coverage might exist under the National Union policies . . . The Superior Court premised its coverage determination on reports submitted by two experts on behalf of Kvaerner stating that torrential rains may have caused the damages complained of by Bethlehem. The court held that these reports create uncertainty as to the cause of damage and perhaps set forth an 'occurrence' as required by the policies to trigger coverage, thus making summary judgment improper. *The Superior Court erred in looking beyond the allegations raised in Bethlehem's Complaint to determine whether National Union had a duty to defend Kvaerner and in finding that the Battery's damages may have been the result of an 'occurrence.'* In doing so, it departed from the well-established precedent of this Court requiring an insurer's duty to defend and indemnify be determined solely from the language of the complaint against the insured. We find no reason to expand upon the well-reasoned and long-standing rule that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself." (emphasis added)); *see also Lupu v. Loan City, LLC*, 903 F.3d 382, 391 (3d Cir. 2018) ("We have repeatedly recognized and applied this well-established precedent. Moreover, Pennsylvania courts have identified no exception to the time honored rule . . . . Legal commentors concur. For instance, one source counts Pennsylvania among the states in which the answer is simple—No. Courts are not permitted to consider extrinsic evidence." (cleaned up)); *Kiely ex rel. Feinstein v. Phila. Contributionship Ins. Co.*, 206 A.3d 1140, 1146–47 (Pa. Super. Ct. 2019) ("The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. We do not consider extrinsic evidence . . . . [T]he court erred in permitting Appellant to introduce extrinsic evidence into the record and further erred in considering this evidence in evaluating whether the Underlying Complaint triggered PCIC's duty to defend her.").

*Mut. Ins. Co.*, 214 A.3d at 695 (cleaned up).  "If the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy, the insurer is obligated to defend."  *Am. Guarantee & Liab. Ins. Co. v. Law Offices of Richard C. Weisberg*, 524 F. Supp. 3d 430, 454 (E.D. Pa. 2021) (cleaned up).  "In conducting this review, we must take as true the factual allegations of the underlying complaint and liberally construe them in favor of the insured."  *Id.* (cleaned up).

Unlike the duty to defend, the duty to indemnify "is not necessarily limited to the factual allegations of the underlying complaint"; instead, "there must be a determination that the insurer's policy *actually* covers a claimed incident."  *Sapa Extrusions, Inc.*, 939 F.3d at 250 (cleaned up); *see also Atain Ins. Co. v. E. Coast Bus. Fire, Inc.*, Civil Action No. 17-2545, 2018 WL 637579, at *2 (E.D. Pa. Jan. 31, 2018) ("A duty to indemnify does not arise until the insured is found liable for a covered claim."); *Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F. Supp. 2d 339, 344 (E.D. Pa. 2011) (noting that the duty to defend "is interpreted more broadly than the duty to indemnify").  Thus, there can be a duty to defend but no duty to indemnify.

## III.  Discussion

Mapfre argues that it is entitled to summary judgment and has no obligation to defend or indemnify Mr. Forte because the ATV accident occurred on a public road and the motor vehicle liability exclusion bars coverage.  (Doc. No. 18-1.)  In response, Mr. Forte argues that the motor vehicle liability exclusion does not apply because the underlying complaint sets forth allegations of negligent training and said training would have occurred at Mr. Forte's residence, the insured location.  (Doc. No. 20 at 5–8.)

The Court concludes that Mapfre is not required to defend Mr. Forte because the motor vehicle liability exclusion applies.  Here, the underlying complaint alleges that the accident

occurred on Bensalem Boulevard, a public street.  (*See* Doc. No. 1-3 at ¶¶ 32–33, 36–38; *see also id.* at ¶ 30 ("On January 27, 2017, at for [sic] about 5:49 pm, [Gianni] did not have a valid license from the Commonwealth of Pennsylvania to operate an ATV on a public roadway.").)  The Policy provides that there is no motor vehicle liability coverage unless the motor vehicle is designed for recreational use off public roads and the occurrence takes place at the "insured location."  (Doc. No. 1-4 at 31.)  An "insured location" includes, *inter alia*, (a) the "residence premises," (2) "the part of other premises, other structures and grounds used by [the insured] as a residence"; and (3) "any premises used by [the insured] in connection with the premises described in a. and b. above."  (Doc. No. 1-3 at 16.)  Because the ATV accident occurred on a public street—and not an "insured location"—the exception to the motor vehicle does not apply.  *See, e.g.*, *Nationwide Mut. Ins. Co. v. Gardner*, 79 Pa. D. & C. 4th 150, 163 (Ct. Comm. Pl. 2006), *aff'd*, 928 A.3d 1135 (Pa. Super. Ct. 2007) ("In this case, 'insured location' means 'the residence premises' and 'a premise you use [in connection with the residence premises.]  . . . [T]he accident in this case occurred on a public road leading to a private road . . . . We cannot and will not conclude that the language of the exception is sufficiently broad to encompass public roads, particularly since the legislature has ordained it unlawful to operate an ATV on public roads not designated and posted as an ATV road."); *id.* at 164 ("Our conclusion is that the definition of 'insured location' in the policy in this case is not broad enough to include a public road."); *see also O'Brien v. Ohio Cas. Ins. Co.*, 46 Pa. D. & C. 5th 481, at *4 (Ct. Comm. Pl. 2015) ("In the present case, while Plaintiffs O'Brien utilize Lake Spangenberg Road ninety-five percent (95%) of the time they exit their property, the road is maintained by Jefferson township.  The policy term 'premises you use' cannot extend to coverage on a public road."); *cf. Haines v. State Auto Prop. & Cas. Ins. Co.*, Civil Action No. 08-CV-5715, 2010 WL 1257982, at *6 (E.D.

Pa. Mar. 25, 2010) ("Plaintiffs claim that because the definition of an 'insured location' in the 2002 policy includes 'any premises used by you in connection with' the residence premises, the policy provided coverage for use of the golf cart while it was in the alley behind their neighbors' home . . . . In none of [the cases cited by Plaintiffs], however, were the insureds operating their vehicle on a publicly maintained thoroughfare in a residential area.  This Court is inclined to agree with the holding in *Nationwide Mutual Insurance Company v. Gardner*, in which the Court concluded that the term 'a premises you use,' although broad enough to include a private road, was not broad enough to include a public thoroughfare.  Were such a broad definition of premises applied, the distinction between motor vehicle and homeowner's insurance would be functionally eliminated[.]").[7]

Further, the Court is unpersuaded by Mr. Forte's contention that the motor vehicle liability exclusion does not apply because the allegations against Mr. Forte are for negligent acts that occurred at his home (the residence premises), not at the location of the crash (Bensalem Boulevard).  (*See* Doc. No. 20 at 6 ("[T]he claims against Defendant John F. Forte do not concern the crash itself, as he was not the operator of the ATV.  Instead, all claims alleged against Defendant John F. Forte in the Underlying Lawsuit concern allegedly negligent acts originating exclusively at the insured premises – 5421 Flushing Road, Bensalem, PA 19020.").)

---

[7] Mr. Forte does not argue that Bensalem Boulevard was used "in connection" with his residence premises.  But even if he did, there is no evidence that the area in which the accident occurred was repeatedly used by Gianni and/or Mr. Forte in connection with their residence premises.  *Contra Farmers New Century Ins. Co. v. Angerson*, No. 4:04-cv-2608, 2008 WL 238622, at *14 (M.D. Pa. Jan. 22, 2008) ("In this case, Angerson and C.L.A. made frequent use of the area in which the accident occurred.  About 10-15 times per month, Angerson rode the ATV from his property onto the paths through the woods adjacent to his land.  About once a week, C.L.A. also rode the ATV on these adjacent paths . . . . These facts demonstrate that Angerson and C.L.A. repeatedly rode the ATV from their property into the adjacent woods and back for recreational and home-improvement purposes.  Therefore, the area where the accident occurred was used in connection with the residence premises within the meaning of the term 'insured location' contained in the Farmers policy.").

As noted above, the Rapinos allege in the underlying complaint that Mr. Forte negligently entrusted his son with the ATV, negligently supervised his son, and negligently trained his son on how to drive the ATV.  (*See, e.g.*, Doc. No. 1-3 at ¶¶ 9–13, 59.)

Pennsylvania courts, and federal courts applying Pennsylvania law, have held that damages arising out of claims of negligent entrustment of a motor vehicle, as well as negligent supervision and training as to the use of a motor vehicle, are proximately caused by the motor vehicle and, therefore, fall within the motor vehicle exclusion.  *See, e.g.*, *Countryway Ins. Co. v. Slaugenhop*, 360 F. App'x 348, 351–52 (3d Cir 2010) ("Pennsylvania courts interpreting motor vehicle exclusions have . . . consistently rejected attempts to divorce allegations of negligent entrustment from the excluded 'use' of a vehicle that actually causes the plaintiff's injuries . . . . We believe that the reasoning employed in those cases forecloses Sams's attempts to separate his negligent delegation allegations from the use of the vehicle that actually gave rise to his claims. Here, Walter's use of the pickup truck is 'integral' to Sams's allegations against Paul . . . . [T]here could be no negligence claim against the insured but for someone's—i.e., Walter's— 'use' of a motor vehicle."); *Nat'l Cas. Co. v. Borough of Wyomissing*, 57 F. App'x 62, 66 (3d Cir. 2003) ("Pennsylvania courts have held that negligent entrustment of an automobile 'arises out of' the ownership or use of the automobile, and other states have held that negligent supervision of the individual driving the automobile arises out of ownership and use. Accordingly, the claim involving failure to promulgate adequate motor vehicle guidelines still alleges an injury which was proximately caused by the motor vehicle and falls within the automobile exclusion."); *City of Williamsport v. CNA Ins. Cos.*, No. 4:19-CV-00170, 2019 WL 2137230, at *2 (M.D. Pa. May 16, 2019) ("Ms. Westbrooks sought to hold the officer liable for his conduct while driving and the City liable for its supervision and training of the officer.

Pennsylvania courts, however, consider damages arising out of these types of claims as being proximately caused by an automobile."); *cf. Allstate Prop. & Cas. Ins. Co. v. Filacheck*, Civil Action No. 10-3634, 2011 WL 2111219, at *4 (E.D. Pa. May 25, 2011) ("[T]his is a negligent delegation case in which Filacheck allegedly watched Maher become intoxicated, encouraged Maher to drink, and delegated driving duties to him.  Although these acts may well have been negligent and a jury may find Filacheck liable, such liability is undeniably intertwined with Maher's use of the vehicle that actually gave rise to the injury.  The vehicle Maher drove was both the instrumentality of the injury and a necessary element in Ung's theories of liability against both men.  Thus, because Kap's death indisputably 'arose out of the use' of a motor vehicle, any liability-inducing conduct which occurred before such use cannot be divorced from the negligent driving that led to the fatal car accident.").[8]

Likewise, here, the injuries Nicholas sustained indisputably arose out of Gianni's use of the ATV, and any liability-inducing conduct that occurred before the ATV accident, such as Mr. Forte's failure to train Gianni on how to use the ATV or his negligence in entrusting Gianni with the ATV, "cannot be divorced from the negligent driving that led to the" accident.  *See Filacheck*, 2011 WL 2111219, at *4.  Accordingly, because the damages arising out of the Rapinos' claims for negligent entrustment, supervision, and training were proximately caused by

---

[8] Mr. Forte acknowledges this line of case law but argues that the instant case is distinguishable because it involves allegations of negligent training, not just negligent supervision and negligent entrustment.  (*See* Doc. No. 20 at 8 ("Defendant acknowledges that Pennsylvania caselaw has held that claims of negligent entrustment and negligent supervision against a parent do not exist independently of use of the motorized vehicle such that the insurer has a duty to defend against the claims for the same.  However, Defendant believes the instant matter is distinguished by the additional claims presented in Paragraphs 10 and 11 of the Complaint . . . .").)  But this is a distinction without a difference.  Mr. Forte fails to cite any case law that supports his contention that negligent training is different from negligent supervision or negligent entrustment.  And this Court has found at least one case that suggests otherwise.  *See City of Williamsport*, 2019 WL 2137230, at *2 (finding that the exclusion applied to negligent supervision and training claim against the City).

the ATV, the motor vehicle liability exclusion in Mr. Forte's Policy applies.

Moreover, the Policy unambiguously excludes coverage for bodily injury arising out of negligent entrustment and negligent supervision of a motor vehicle.  (*See* Doc. No. 1-4 at 15 (defining "motor vehicle liability" to include "liability for 'bodily injury' . . . arising out of . . . entrustment of such vehicle or craft by an 'insured' to any person [and] failure to supervise or negligent supervision of any person involving such vehicle or craft by an 'insured'"); *id.* at 30–31 (motor vehicle liability exclusion).)  *See Filacheck*, 2011 WL 2111219, at \*4 ("Moreover, even if Ung's allegations against Filacheck could be so neatly separated from her claims against Maher, Filacheck's insurance policy also excludes coverage for bodily injury arising out of the negligent supervision of any person arising from the use of any motorized land vehicle.  Because the Allstate Policy unambiguously excludes coverage for injuries which arise out of the use of a motor vehicle, or the supervision of another's use of a motor vehicle, Ung's negligence claims against Filacheck fail to support a recovery that would be covered by the Policy.  Allstate therefore has no duty to defend Filacheck in the underlying action.").

Because the motor vehicle liability exclusion applies, the Court holds that Mapfre has no duty to defend Mr. Forte in the underlying action.  And because Mapfre does not owe Mr. Forte a defense, it follows that Mapfre does not owe Mr. Forte indemnity.  *See Atain Ins. Co. v. Basement Waterproofing Specialists, Inc.*, Civil Action No. 20-5440-KSM, 2021 WL 5319903, at \*8 (E.D. Pa. Nov. 3, 2021) ("And because we find that there is no duty to defend, there necessarily can be no duty to indemnify."); *see also Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351, 355 n.5 (E.D. Pa. 2017) ("Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend." (cleaned up)).

**IV.     Conclusion**

For the foregoing reasons, the Court grants Mapfre's motion for summary judgment and holds that Mapfre does not owe Mr. Forte a defense or indemnification.

An appropriate Order follows.